GEORGE G. MUNGER, Respondent, *v.* THE ALBANY CITY NATIONAL BANK et al., Appellants.

Plaintiff made a deposit with the F. and M. Bank, receiving therefor a certificate payable to his order, on return thereof, with interest. While the certificate was outstanding, that bank discounted plaintiff's note in renewal of a former note held by it; and in the ordinary course of business and for a valuable consideration, indorsed and transferred the note to

defendant, the A. C. N. Bank, before maturity, said defendant receiving it in good faith and in ignorance of such deposit. The A. C. N. Bank then held certain securities as collateral for all paper so transferred to it by said F. and M. Bank. At the time of the transfer the latter bank was solvent, but thereafter was adjudicated a bankrupt and defendant McL. was appointed assignee. Plaintiff's note was duly protested and the F. and M. Bank charged as indorser. The A. C. N. Bank still held some of the collaterals; plaintiff advised it of his deposit and asked that it avail itself of the collateral securities for his benefit, to the amount of the note; this it refused to do, but surrendered the securities to McL., taking from him a guaranty of the collection of the note. No demand for payment of the certificate was made of the F. and M. Bank before it was adjudicated a bankrupt. In an action brought to compel the application of the securities to the payment of the note, *held*, that plaintiff was not entitled to the relief sought; that no right of set-off, either legal or equitable, existed at the time of the transfer of the note; and that the legal rights of the A. C. N. Bank were not so affected by subsequent equities arising out of the changed relations of plaintiff and the F. and M. Bank as to require it to first resort for payment to the securities in exoneration of plaintiff; also that the other creditors of the F. and M. Bank stood equal in law and in equity with plaintiff, and the A. C. N. bank was bound to regard their interests as well as his.

Also *held*, that no right of set-off arose under the Federal Bankrupt Act.

There is no right of action upon a certificate of deposit in ordinary form issued by a bank until demand of payment.

*Smith* v. *Felton* (43 N. Y. 419), *Colgrove* v. *Tallman* (67 id. 95), distinguished.

*It seems* that a "mutual credit" is a knowledge on both sides of an existing debt due to one party and a credit by the other party, founded on, and trusting to that debt as a means of payment.

(Argued March 2, 1881; decided October 4, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 30, 1880, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Amasa J. Parker* for appellants. The court has no jurisdiction of an action against an assignee in bankruptcy, the object of which is to distribute the assets of the bankrupt. (U. S. R. S., §§ 711, 4972; *Kidder* v. *Horrabin*, 72 N.

Y. 167.) The moneys represented by the certificate of deposit were, by its terms, not due until its return, and such is its legal construction. (*Adams* v. *Orange Co. Bank*, 17 Wend. 514; *Downes* v. *Phœnix Bank*, 6 Hill, 297; *Kingston Bank* v. *Gay*, 19 Barb. 460; Story on Bailments, 66, § 68; *Marzitti* v. *Williams*, 1 Barn. & Ald. 415; *Merritt* v. *Todd*, 23 N. Y. 29.) It was not negotiable, and no action could be maintained on it without a demand. (*Curtis* v. *Leavitt*, 15 N. Y. 263; *Fort* v. *McCully*, 59 Barb. 87; *Payne* v. *Gardiner*, 29 N. Y. 146.) Notice at that time that these securities were surrendered was of no importance. (*Hoge* v. *Lansing*, 35 N. Y. 136; *Howard Banking Co.* v. *Welchman*, 6 Bosw. 280.) It was plaintiff's duty to set up the securities in the suit upon his note by the Albany City Bank, and having failed to do so, he cannot now be heard to complain. (*Dobson* v. *Pearce*, 12 N. Y. 156; *McHenry* v. *Hazard*, 45 id. 587; *Winfield* v. *Bacon*, 24 Barb. 155; *Philips* v. *Gorham*, 17 N. Y. 270; *Bartlett* v. *Judd*, 23 Barb. 262; *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637; *Savage* v. *Allen*, 54 id. 458, 463; *Sheehan* v. *Hamilton*, 2 Keyes, 304; *Winfield* v. *Bacon*, 24 Barb. 154; *Schell* v. *Erie R. Co.*, 51 id. 368; *Cummings* v. *Morris*, 25 N. Y. 625; *Pitcher* v. *Hennessey*, 48 id. 415–422; *Allerton* v. *Belden*, 49 id. 373.) If the assignee was a necessary party, it was the duty of the present plaintiff to cause him to be brought in as a party to the other, or former suit. (Old Code, § 122; *Groshon* v. *Lyon*, 16 Barb. 461; *Ogden* v. *Bodle*, 2 Duer, 611; *Mills* v. *Block*, 30 Barb. 549; *Dickinson* v. *Codwise*, 4 Edw. Ch. 341; Story's Eq. Pl., §§ 735–738.) At no time while the Farmers and Mechanics' Bank owned plaintiff's note, were the note and certificate subject to set-off. (*Wells* v. *Stewart*, 3 Barb. 40.) A right of subrogation does not spring into existence till the party holding the claim sought to be acquired is paid. It is the payment that gives the right of subrogation or substitution. (Story's Eq. Jur., §§ 635, 636, 637.)

*W. F. Cogswell* for respondent. The Farmers and Mechanics'

Bank being bankrupt and in the hands of an assignee, a return of the certificate was unnecessary ; it was due so that plaintiff could set it off against his note. (*Smith* v. *Felton*, 43 N. Y. 419.) Plaintiff had a right to set off the certificate in equity. (*Matter of Van Allen*, 37 Barb. 228 ; *Holbrook* v. *Receivers, etc.*, 6 Paige, 220 ; *Lindsay* v. *Jackson*, 2 id. 581 ; *Smith* v. *Felton*, 43 N. Y. 420 ; Willard's Eq. Jur. [Potter's ed.] 1004, 1006, 1016, 1019, 1021 ; Story's Eq. Jur., §§ 1433–1443 ; Adams' Eq. Jur. 273, marg. ; *Matthews* v. *Aiken*, 1 Comst. 595, 598 ; Story's Eq. Jur., §§ 559–570, 633–644.) The right of the plaintiff, as between him and the assignee of the Farmers and Mechanics' Bank, to extinguish his note, by applying thereto so much as was necessary of his certificate, is clear under the bankrupt law. (U. S. R. S. [Boutwell's Revision], § 5073 ; Bump on Bankruptcy, 86 [8th ed.] ; *In re Petrie*, 5 Benedict, 110.) This equitable right of set-off of mutual demands is superior to the rights of creditors of an insolvent estate or of a deceased party to have all debts paid ratably. (Willard's Eq. Jur. 1001 ; *Richardson* v. *Parker*, 2 Swan [S. C.], 529 ; *Fennell* v. *Nesbitt*, 16 B. Monr. 351 ; *Holbrook* v. *Receivers, etc.*, 6 Paige, 221–231.) The State court had full jurisdiction in the premises, the case being one of the application of ordinary and well-settled principles of equity, and not one pertaining to the special and peculiar privileges of a court of bankruptcy. (*Kidder* v. *Horrobin*, 72 N. Y. 159 ; *Cook* v. *Whipple*, 55 id. 150 ; *Claflin* v. *Houseman*, 93 U. S. 130.)

FOLGER, Ch. J. This is a suit in equity, to obtain relief, in the nature of the application by the defendant, the Albany City Bank, of certain securities held by it, in which the defendant McLean has an interest, *ex officio*, to the payment of a judgment owned by that bank against the plaintiff, recovered on a negotiable promissory note made by him. In June, 1871, the plaintiff made a deposit with the Farmers and Mechanics' Bank of Rochester of $3,000, and took from the bank a certificate thereof, payable to his order on the return of it, with six per cent interest. While this certificate was outstand-

ing in his ownership, never having been returned to the bank that issued it, nor any demand having been made for payment of or upon it, he made his promissory note to the order of the same bank, payable at two months from date, for $1,500. That bank then had a long standing arrangement with the Albany City Bank, by which the latter discounted for the former such commercial paper as is that note made by the plaintiff, on the same being transferred by the Rochester bank, it becoming liable as indorser thereon, and it having also lodged with the Albany bank certain securities, as a general collateral security for the ultimate payment of the paper thus transferred. In accordance with this arrangement, the Rochester bank indorsed over to the Albany bank the note of the plaintiff, before the same was mature, for a valuable consideration, in the usual course of business, and in good faith by the parties to the transaction, and in the ignorance of the Albany bank of the deposit made by the plaintiff with the Rochester bank. At the time of the transfer of that note, the Rochester bank was solvent, and was carrying on its usual business as a moneyed corporation. When the note made by the plaintiff fell due and payable, it was duly protested for non-payment and the Rochester bank was duly charged as indorser. The Albany bank still held some of the collateral securities above mentioned. The note not having been paid, the Albany bank brought action upon it and recovered judgment thereon against the plaintiff for the amount thereof, which has not been paid. He made no defense in that action. After the transfer of the note, and before that action was brought, the Rochester bank was adjudicated a bankrupt, and the defendant McLean was made assignee of its assets. The plaintiff apprised the Albany City Bank, before it brought action against him, of the fact that he was a depositor with the Rochester bank, and a holder of that certificate, and asked of the Albany bank that it avail itself of those collateral securities, for his benefit, to the amount of that note That bank disregarded the notice and request, and surrendered those securities to McLean as such assignee, taking from him a guarantee of the collection of the

note. Thereupon the plaintiff brought this suit. Two questions arise in the case: First. Whether the plaintiff ever had an equitable right to the relief which he demands; and Second, whether, if he ever had, he should not have set it up as a defense in the action brought against him on the note, and whether the judgment in that action is not a bar to this suit. If either of these questions is solved against him, judgment must go against him in this suit.

This is an interesting case. The elaborate and well-framed opinion given at Special Term, when the case was there on de-murrer, and the sincere and earnest argument for the plaintiff at our bar, have led us to give it a lengthy and attentive consideration. But we have found it hard to perceive in it the principle on which the plaintiff rests his case. For him to have judgment he must establish this proposition : That the legal rights first acquired by the Albany City Bank have been so affected by subsequent equities, growing out of changed relations of the plaintiff and the Farmers and Mechanics' Bank of Rochester, as that the three parties have been put in these attitudes to each other, viz. ; the City Bank, the creditor, the bank at Rochester the principal debtor, the plaintiff the surety, and the creditor-bank the holder as collateral to the debt of securities lodged with it by the principal debtor, to which it can and ought to first resort for payment to the exoneration of the surety. We are troubled to find in the facts any thing that places the parties in those attitudes. Doubtless, the first impression on hearing the facts of the case is, that there is a natural equity that the note of the plaintiff should be applied to the certificate of the Rochester bank, and the difference thus found be the only indebtedness remaining. "But equity goes upon fixed principles ; and it does not allow a set-off or a stoppage, unless there is a recognized rule of law, or a recognized equitable reason that requires it. It does not interfere to declare either a set-off or a stoppage, unless there is one debt contracted on the faith of another ; or an agreement between the parties that one should be discounted from the other ; or there is a rule of law on which to base its action ; or some interven-

ing equity that renders the interposition of the court necessary for the protection of the demand." There is nothing in this case that shows that one debt was contracted on the faith of the other ; or that there was an agreement between the parties that one should be discounted from the other ; nor is any rule of law shown to us, on which to base the action desired ; and if that action is taken, it will be because of some intervening equity that renders the interposition of equity power necessary and proper.

We say that there is no rule of law on which to base the action desired. The seminal principle needed to be fixed as a rule of law is that the plaintiff has a right of set-off to the note. Clearly, he never had that right at law under our former statute of set-off. (2 R. S. 354, § 18 ; *Patterson* v. *Patterson,* 59 N. Y. 574 ; *Jordan* v. *National Shoe and Leather Bank,* 74 id. 467 ; *Coffin* v. *Mc-Lean,* 80 id. 560.) These cases declare the rule, that there cannot be a set-off at law and under our statute, unless both the debts have mutually accrued due and payable in the hands of the parties for and against whom the set-off is sought. Now the note of the plaintiff was not in that state at any time while it was in the hands of the Rochester bank. Nor was the certificate of deposit in that state at any time while that note was in the hands of that bank. Indeed, the debt shown by that certificate was never mature, unless it became so by the proof of it before the register in bankruptcy in 1876 ; or by a return and presentation of the certificate to the assignee in bankruptcy and a demand of payment made to him. At what time this last was done does not appear. It does appear that no demand of payment was ever made before the Rochester bank was put into bankruptcy ; and this was after the Albany bank became the owner of the note. As the certificate of deposit was a negotiable instrument, and was by its terms payable only on the return of it to the bank that had issued it, it never accrued due and payable, never matured until a return of it, and demand of payment made of it. This is of importance, and we think did not have full weight in the formation of the judgments of

the courts below. In the opinion at Special Term which we have mentioned, a distinction is made between a debt which by the terms of the instrument is due and payable at a day certain, and one which is due and payable not at a day certain, but at a time to be determined by an act of the holder and at his option. But the authorities in this State are, that no right of action exists against a depositary of money until an actual demand of it, and that such is the case, though it is in the power of the owner of the deposit to make it due and payable, at any time, by his own act of making the demand. So it was held in *Payne* v. *Gardiner* (29 N. Y. 146), in the case of a deposit of money with private persons. And in *Pardee* v. *Fish* (60 N. Y. 265) it is recognized that there is no right of action upon a certificate of deposit in ordinary form issued by a bank, until a demand of payment has been made. (See, also, *Howell* v. *Adams*, 68 N. Y. 314; *Boughton* v. *Flint*, 74 id. 476.) *Smith* v. *Felton* (43 N. Y. 419) is not in conflict with these authorities; for, whatever may be the language of the opinion read in that case, there is no claim or hint that the set-off there allowed was one arising at law; and there was in that case a seeking for payment of the debt owing by the bank, while it had the legal and equitable title to the note of its deposit creditors, and a demand for a mutual application of the debts before the general assignment by the bank by which that note was transferred. We must take as facts in this case that the debt of the plaintiff against the Rochester bank was not mature, while that bank held the note against him; nor was the note against him mature until after it had become the property of the Albany bank, by a transfer for value, in good faith, and in the usual course of business. Hence, at law, there was no right of set-off, either by the plaintiff of his deposit against the note, or by the Rochester bank or the Albany bank of the note against the deposit. The note had become a legal demand in the Albany bank against the plaintiff, subject to no equities between him and the Rochester bank, if any there existed. We think that is clear, and is of importance in the consideration of the case.

Suppose that, on the day next after the Rochester bank had transferred to the Albany bank the note made by the plaintiff, the certificate of deposit had been presented to the former bank by the plaintiff or by an assignee from him, could that bank have claimed to have set off against it that note, and held itself liable on the certificate for the balance only? Clearly not; for it had parted with all its property in the note and another had become the owner thereof. It had no right then, the enforcement of which it could seek against the plaintiff. He was not bound to pay his note before it was payable by its terms. Besides, that bank had transferred to another all right in the note, and could have none again in it, in ordinary course, until the plaintiff had failed to pay and it had become charged as indorser, and had taken up the note and again become the owner of it. For the same reason, was there any time, from that transfer by it of the note until the present, that that bank could have made that claim with show of right? It appears to us that there was not. How, then, could the plaintiff on his part set up a claim at law to set off any portion of the certificate against the note? We know of no rule of law that would allow him him to do so.

Then we turn from law to equity. The plaintiff never had a right of set-off in equity. Equity sometimes allows a set-off when law will not, because of the insolvency of one debtor, and the willingness of the other to anticipate the time for the payment of the debt owing by him, if the whole or a part of that owing to him may be applied as a set-off. But in this case, these facts did not exist until after the debt against the plaintiff had passed into the ownership of another party, which had acquired all legal and equitable rights in it. Moreover, even had the Rochester bank then been insolvent, and then been the owner of the note, the deposit of the plaintiff was not due and payable, the certificate was outstanding and negotiable, and equity would not have compelled an application of the amount of the note upon the deposit, until some act of the plaintiff making the certificate due and payable in his hands. (*Lindsay* v. *Jackson*, 2 Paige, 581; *Bradley* v. *Angel*, 3 N.

Y. 475 ; *Chance* v. *Isaacs*, 5 Paige, 592.) *Smith* v. *Felton* (43 N. Y., *supra*) is not hostile to this view. We repeat, that there, the defendants were willing and desirous to pay the debt owing by them, whether then payable or not, and had so acted as to make the debt owing to them become accrued, due and payable, and the debtor to them was insolvent. This state of facts is well recognized as warranting the exercise of equity power to decree a set-off. But here they did not exist.

We have then a case, in which with no right of set-off then existing, either at law or in equity, the contract of a party has been transferred in exact conformity with its terms, and has become a lawful demand in the hands of the transferee. (3 N. Y., *supra ;* 5 Paige, *supra*.)

Let us now consider the effect of the provisions of the Federal Bankrupt Act. (Laws of U. S. 1867, chap. 176, §§ 19, 20.) It was thereby provided, that in all cases of mutual debts, or mutual credits, the account should be stated, one debt set off against the other, and only the balance be allowed or paid. The Federal Judiciary has held that by these provisions it was not intended to enlarge the doctrine of set-off beyond what the principles of legal or equitable set-off before that warranted ; that the debts must be mutual, must be in the same right. (*Sawyer* v. *Hoag*, 17 Wall. 610.) And it is further held, in adjudication upon the same act, that mutual debts must be debts between the same parties. (*Gray* v. *Rollo*, 18 id. 629.) It is clear then that the debts in this case are not mutual debts within the purview of the Bankrupt Act. The note made by the plaintiff, payable to the order of the bank at Rochester, has been by that bank before maturity ordered to be paid by the plaintiff to the Albany bank, and by the terms of his contract the plaintiff had become the debtor of the latter. Thereby the debt from the plaintiff is to the latter bank, while the debt to him is from the former bank. They are not debts between the same parties, they are not mutual. The same authority (18 Wall., *supra*) holds that there is not a mutual credit where there is not a connection between the claims. It is clear then that there were not when the Rochester bank became insolvent,

and was put into bankruptcy, mutual credits existing between it and the plaintiff. There was no connection between the credit for the deposit, and the credit for the sum loaned on the discount of the note. It appears from the evidence that the note was a renewal of a note existing before that, and that there were numbers of such renewals, the first note having been for the larger sum of $2,000; $500 were paid in reduction of that. That sum does not appear to have been taken from the money of the plaintiff on deposit. There is no finding, no proof, there can be no inference, that the discount of the first note for the plaintiff, and the renewals of it by the Rochester bank, were made in dependence upon, or in view of, the deposit by him with the bank; or that he made the deposit in expectation of a discount, or for the purpose of getting it, or as a means or security for the payment of it. There was no connection between the two acts, and no mutual credit, for neither was entered into in consequence or in reliance upon the other, and no agreement was made that one should stand against the other. (Id.) Apart from the Bankrupt Act, and the interpretation of it by the Federal Judiciary, it seems, that a mutual credit is a knowledge on both sides of an existing debt due to one party, and a credit by the other party founded on and trusting to that debt, as a means of discharging it (*Ex parte Prescot*, 1 Atk. 231; *Rose* v. *Hart*, 8 Taunt. 499; *Key* v. *Flint*, id. 23); though it is to be confessed that the decisions are not harmonious. (*Hankey* v. *Smith*, 3 T. R. 507; *French* v. *Fenn*, 3 Doug. 257.) We doubt, then, whether the case can be brought within the provisions of the Federal Bankrupt Act, as one showing a mutual debt or a mutual credit. Besides that, when the bank at Rochester was adjudicated a bankrupt, it had no debt against the plaintiff, and in that sense he had no credit with it; so that there was not in fact a mutual debt or a mutual credit to be mutually applied. The credit, so to speak, of the plaintiff with that bank had been sold to the Albany City Bank, and had become a legal demand owned by it.

It remains to be seen whether there is an intervening equity

that rightfully demands the exercise of equitable power for the protection of the plaintiff. The reasoning by which that end is sought is this: The Rochester bank assumed the payment of the note by indorsing it, and by the previous pledge of securities as collateral for the payment of all such indebtedness; it thereby became the debtor of the Albany City Bank and continued the creditor of the plaintiff. When the note matured, the Albany bank had a choice of remedies, to sue the plaintiff or make the money from the collaterals; and if it had made use of the latter, the Rochester bank or the assignee in bankruptcy of it would have had a right to take up the note by payment, and would then again become the creditor of the plaintiff, when a right of set-off in him would at once spring up and he could apply enough of the deposit to pay the note. We will not deny that the Albany bank might have so acted, and that such might have been the result. But is that the question involved here? Is not the question this, had the plaintiff the equitable right to compel the Albany bank so to act? It was the legal owner of his obligation, which had passed to it in exact accordance with the terms in which he had expressed his contract. By that contract he was the principal debtor, and the liability of the Rochester bank was collateral or contingent only. Our difficulty is, to see how the plaintiff could change this legal relation of the three parties to that strictly legal contract so as to make the Rochester bank the principal debtor, and himself the surety only. If this can be once established, it is easy to apply the doctrine of the marshaling of securities, or the election of different funds, to the relief and benefit of the plaintiff. We are aware that the relation of a creditor to different debtors may be changed from those legal to those equitable without his assent. *Colgrove* v. *Tallman* (67 N. Y. 95) is a case of that kind, and several others are there cited. It is to be noticed of them, however, that the relations of the debtors among themselves had first been changed by their own agreement, or by operation of law from acts of theirs which they had a right to do; from which acts, when knowledge or notice enough for inquiry of them came to the creditor, there resulted also, by operation

of law, a change in his relations to his different debtors. One debtor or one piece of property became the only principal debtor, and another debtor or another piece of property from a principal became a surety, and the creditor, having knowledge or notice thereof, was bound to respect the change. But that was by an equity acting first among the debtors. Such equity we fail to find here. When the bank at Rochester transferred to the bank at Albany the note of the plaintiff, no equity existed empowering him to set off his deposit against that note. The Rochester bank did just what he gave it legal and equitable right to do. It transferred his note, and took the avails of the transaction, and became a debtor collateral or contingent to him. Those avails entered into its property. The securities that it had before that pledged under the general agreement were its property. All were its assets, held by it for the security of all of its creditors—other creditors as well as the plaintiff. He having no right of set-off or stoppage or application when his note was transferred, we fail to see how a paramount right thereto now arises to him from the fact that the Rochester bank had put with the Albany bank certain securities as collateral for a general indebtedness, or general contingent liability. They were put there before this note was made, as a general and continuing security for any indebtedness of the bank at Rochester arising from the failure of promisors to pay, and with the expectation that payment should first be sought from those promisors. In this respect the fact found by the second Special Term differs from the fact averred in the complaint upon which the first Special Term acted on demurrer. Nor were they placed at all with a view to the benefit of the plaintiff, or to aid or relieve him. Until insolvency at least, the bank at Rochester was a collateral obligor for the plaintiff, and could have insisted that the City Bank should pursue the plaintiff on his note, before resorting to it or to the collaterals; for the certificate of deposit was still outstanding and negotiable, and might go into hands in which the whole amount of it could be enforced against the Rochester bank. And when there came insolvency and bankruptcy

upon the bank at Rochester, as there were not then in fact and in law mutual debts or credits between it and the plaintiff, why did not the legal rights of other creditors and their equities, as great as those of the plaintiff, intervene or take equal rank? Was not the City Bank bound to regard them as much as it was any set up by the plaintiff? Did not those creditors stand equal in law and in equity with the plaintiff? They and he were represented by the defendant McLean, the assignee in bankruptcy, and with McLean the City Bank dealt of right. As we read the facts, there is no door in them for a right of set-off in the plaintiff to come in. We do not perceive that the plaintiff has established that the relations of the parties, created by the making and indorsement over of the note, have been changed.

We are led to the conclusion that the judgment should be reversed.

All co~~ur, except RAPALLO, J., absent at argument, and DANFORTH, taking no part.

Judgmen\ ~ed.