THE FLOUR CITY NATIONAL BANK OF ROCHESTER, RESPONDENT, *v.* THE TRADERS' NATIONAL BANK OF ROCHESTER, APPELLANT.

*Certification of a draft by the bank at which it is payable — it has the same effect as the certification of a check — custom among banks — a* bona fide *purchaser is not affected by it.*

The banks in Rochester were accustomed to settle the balances between themselves daily in cash, or by draft on New York, as the debtor preferred. It had also been customary for a bank at which a draft was made payable, upon presentation thereof by another bank, to certify the same and return it to the bank presenting it and allow the amount thereof in the settlement of the balances of the day. A draft, payable at the plaintiff's bank on December nineteenth, was on that day there presented for payment by the City Bank of Rochester, and after having been certified as good the same was returned to the City Bank. The City Bank transferred it to the defendant bank in part settlement of the balance due it on that day. The defendant having sought to apply the draft in part payment of the balance due from it to the plaintiff on that day, the plaintiff refused to receive it upon the ground that the City Bank was on that day, and had been on several days prior thereto, indebted to it in an amount exceeding the amount of the draft, and that the said City Bank was insolvent. *Held,* that the plaintiff was bound to receive the certified draft.

That the certification of the draft was equivalent to the certification of a check, and the certified draft was a negotiable instrument which did not become due until presented for payment.

That the expectation of the plaintiff, founded upon the custom of the banks, that the City Bank would return the draft to it the next morning to be used in discharge of its indebtedness, in no way affected the rights of a *bona fide* purchaser of the draft without notice.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

This action was brought to recover the sum of $800 claimed to be a balance due the plaintiff from the defendant on the 19th day of December, 1882. The defendant interposes a counter-claim, founded on the plaintiff's certification of an acceptance, made the same day, which had come to the defendant's hand. The parties are national banks doing business in the city of Rochester, in which place the City Bank of Rochester, a State bank, was at that time also located and doing business. The cause was tried at the Monroe Circuit, without a jury, and the plaintiff recovered its demand, and from the judgment entered on that decision the defendant appeals.

*William F. Cogswell,* for the appellant.

*Thomas C. Montgomery,* for the respondent.

BARKER, J. :

The plaintiff and defendant in the regular course of banking business, had mutual accounts, called by bankers an exchange account, which was balanced each day, and such balance paid the next morning in cash or by draft on New York, at the option of the debtor bank. Each of these banks kept a similar account with the City Bank of Rochester, but as between the defendant and the City Bank, the balance was paid at the close of each day's transactions. It was the custom of these banks, in dealing with each other, when one held a check, note or acceptance, payable at one of the other banks, to present it for payment at such bank on the day it became due, and instead of receiving payment thereon, have it certified in the form hereafter mentioned by the bank at which it was payable, and for the bank presenting it to hold the same until the balance of the current day's business was paid and the same was entered in the exchange account at the time of the certification. The case states that a similar custom prevailed among all the banks in the city of Rochester.

The City Bank held a draft drawn by a Boston house on D. Gorden, of Rochester, payable to the order of its cashier, which was accepted by the drawee on the fifteenth day of December, and by him made payable at the plaintiff's bank, which fell due on the

nineteenth of December. This draft was on that day presented by the City Bank to the plaintiff's bank for payment, and the teller indorsed thereon the customary certification, which was in the following words : "Certified : J. Thompson, Teller, Flour City Bank," and returned the draft to the City Bank and charged the acceptor's account with the amount of the same. On the same day there was a balance due on the daily exchange account to the Traders' Bank, from the City Bank, of $8,000. Such balance was paid by the cashier of the City Bank during the business hours on that day. And among other things, Gordon's acceptance, as certified, was taken by the Traders' Bank in payment. On balancing the exchange account of the same day between the Flour City Bank and the City Bank there was due to the former from the latter more than $800, and there was a much larger sum due from the City Bank to the Flour City Bank on the previous day's balance of the same account. There was due the Flour City Bank from the defendant, the Traders' Bank, at the end of the same day's business, as the balance of the exchange account between them, more than $800, and the next morning the defendant offered Gordon's acceptance, as certified, to the Flour City Bank toward the payment of such balance, which was refused and returned to the defendant. This action is to recover such balance from the defendant.

The defendant sets up in its answer Gordon's acceptance, as certified by the plaintiff, as a counter-claim. The City Bank did not open for the transaction of business after it closed on the nineteenth, and it was then insolvent and the balance due by it to the plaintiff, as before mentioned, remains unpaid.

The act of the plaintiff in certifying Gordon's acceptance, and charging the amount to his account, was in legal effect a payment, and discharged the acceptor and drawers and the bank became a debtor to the holder for the amount of the same. By the law merchant, the certificate of a bank indorsed on a draft made payable at its counter, that the same is good is equivalent to an acceptance by the bank. It implies that the acceptor has funds in the bank sufficient to pay the same, and that they are intended to be used for that purpose, and that the bank is authorized to make the application. It is an undertaking on the part of the bank that it will hold such funds for the use of the holder of the paper and pay them

over to him on return of the draft. On these propositions, as thus stated, there is no disagreement between the counsel for the respective parties.

The Special Term held that the bank's obligation, assumed on making the certificate, was not negotiable in the sense of that term, and that its promise was past due when the draft and the certificate thereof was transferred by the City Bank to the defendant.

Accepting these propositions as sound law, the legal conclusions reached by the decision of the Special Term would be correct that the defendant received the draft subject to the offsets and counter-claim existing in the plaintiff's favor at the time of the transfer as between it and the City Bank. In these views of the learned judge we are unable to concur; on the contrary, we concur with the defendant in its contention that the plaintiff's obligation, based on the certificate, possesses in a legal sense all the features of nego-tiability, and was not due until demand of payment and return of the certificate. Therefore the defendant was entitled to offset its claim as holder of the plaintiff's obligation arising out of its certification.

In considering the nature and extent of the plaintiff's liability arising out of the certification, it is important to keep in mind that the liability of the original parties to the draft terminated with the making of the certificate, and at the same time the bank's liability commenced, which is an original one based upon a good considera-tion moving from the holder. It is in short a contract partly written and partly in parol, to be enforced according to the intent and meaning of the parties. If the certificate had been placed upon a check drawn on the plaintiff's bank by one of its customers, there would be no room for a difference of opinion as to the nature and effect of the bank's undertaking, and that the same would not mature until after a demand made, and that the same would be regarded as a negotiable instrument in the commercial sense of the term.

The certification by a bank of an acceptance made payable at its counter, by one of its customers, has the same significance, and imports the same obligation on the part of the bank as a like cer-tification of a check drawn on it, and has the same legal effect. In one instance it is an admission that the acceptor, and in the other

that the drawer, has money on deposit in the bank, with which to pay the paper when presented for payment, and the bank will retain the money on deposit to pay the holder, and will retain the same on deposit subject to the order of the holder. In the case of *The Merchants' Bank* v. *State Bank* (10 Wall., 648), in stating the bank's liability based upon the certification of a check, the court said: "It is an undertaking that the check is good then and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit, payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money. Thus it continues to perform its important functions until, in the course of business, it goes back to the bank for redemption, and is extinguished by payment." Prior to and subsequent to the decision of this case, the courts of this State had given the same interpretation to the contract of certification, and held the bank's liability to pay as broadly as stated in the portion of the opinion we have quoted. (*The F. and M. Bank* v. *The Butchers' and D. Bank*, 28 N. Y., 428; *S. C.*, 14 id., 623; *Meads* v. *The M. Bank of Albany*, 25 id., 143; 2 Daniels on Negotiable Instruments, 254.) In Mead's case one of the instruments, certified by the bank at which it was made payable, was a note, and the other was a check, and the court held the bank alike liable on each, and, as to the note, the court remarked: "The presentation of the note at the counter of the bank on its maturity, for payment, was in the ordinary course of business, and so was the making of the certificate then and there indorsed by the teller, certifying that the same was good. The legal effect and force of such certificate was that the maker had deposited funds in the bank to meet said note, and that the bank then held the same on deposit for that purpose, and would pay the amount upon request." In the case now here, the transaction in legal effect was a deposit of the money by the acceptor of the draft with the bank making the certificate, and not a loan in the ordinary acceptance of that term. This view of the transaction is taken by all the courts. It is a well settled law that,

where money is placed on deposit, the depositor is not liable to an action, and the statute of limitations does not commence to run on his obligation, until after a demand of payment is made in pursuance with the terms of deposit. And such is this case, though it is in the power of the owner of the deposit to make it due and payable at any time, by its own act of making the demand. (*Munger* v. *Albany City Nat. Bank,* 85 N. Y., 587.)

If the object of the certificate is understood by both parties to be for the purpose of enabling the holder to use it as money, and the transferee may take it with the same sense of security as he could the notes of the bank, it is inconsistent with such views as to the nature and effect of the contract to say, that it is not negotiable and is due when issued.

We have thus far viewed the case without considering what the effect of the custom of dealing between the banks has on the legal rights of the parties. We are unable to discern any fact or circumstance connected with the custom which affects the legal rights of the defendant. It paid a full consideration for the certified draft, and it was ignorant of the circumstance that, on the day of the certification, the City Bank was a debtor to the plaintiff, or that the balance of that day's transaction would leave the City Bank a debtor in a further sum to the Flour City Bank. The expectation and understanding on the part of the Flour City Bank, when it made the certification that the City Bank would return it the next morning to be used in discharge of its obligations, is not sufficient in and of itself to deprive a holder, taking title through the City Bank, of the protection which it has, arising out of the circumstance that it was not due and was also negotiable.

The defendant, conceding that it knew the fact that the City Bank paid the balances against it, at the close of each day's transaction, to the plaintiff in certificates of this character, it was still justified in receiving this paper, for it had no reason to suppose that the City Bank would not, in some proper way, discharge all its obligations to the plaintiff if the balance was found to be against it. Suppose that the City Bank was the agent of the drawer of the draft for the purpose of collecting the same, and on receiving the certificate had returned it to them, can it be said that the plaintiff could offset its balances against the City Bank and thus deprive the

holder of the payment which the acceptor made? The law, by placing upon the plaintiff's obligation the features of negotiability and treating the same as not due until after demand puts an end to the plaintiff's contention.

Judgment reversed, new trial granted, with costs to abide the event.

HAIGHT and BRADLEY, JJ., concurred.

Judgment reversed and new trial granted, with costs to abide the event.