(83 Misc. Rep. 566)

### HEINRICH v. FIRST NAT. BANK OF MIDDLETOWN.

(Supreme Court, Trial Term, Orange County. January 19, 1914.)

1. BANKS AND BANKING (§ 301*)—RELATION OF DEPOSITOR—SAVINGS ACCOUNT—CHARGING OF NOTES—PAYMENT.

The assignor of plaintiff's testator had a general deposit account in defendant bank, which also maintained a savings department. In October, 1911, assignor opened a savings account and deposited $4,000 therein. He executed three notes to the order of S. & Co. for $1,000 each, payable at defendant bank in four months, which notes, on or before April 23, 1912, came to the bank for collection, but were never owned by it. On April 22, defendant received from S. & Co. checks aggregating $3,003 for deposit to the credit of assignor's general account, to make the same good for the payment of the notes, and defendant, instead of receiving the same for collection, immediately credited them to assignor's general account and charged the notes against the same, canceling them. Defendant, instead of sending the checks direct to the drawee bank, sent them to its correspondent in Philadelphia. They were lost in transit, and not found until February, 1913. No notice was given to assignor of such loss until May 8, 1912, and on June 5th following, S. & Co. became bankrupts, and the checks were never paid. S. & Co., however, up to June 5, 1912, had sufficient funds on deposit to meet the checks, and if they had been presented, they would have been paid. On June 6th defendant, without assignor's knowledge or consent, charged the notes against assignor's savings account. *Held,* that the notes having been charged to assignor's general account when they became due and when there was sufficient funds in that account to pay them, assignor was not a debtor of the bank at the time the notes were charged against the savings account, and such charge was illegal.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. § 301.*]

2. BANKS AND BANKING (§ 301*)—SAVINGS BANK—RULES—PAYMENT OF DEPOSITS.

Where a bank maintained a savings department, in which it accepted the deposits only in accordance with specified rules, one of which provided that, in case of withdrawals, the same must be made by draft in a specified form, and that the passbook must accompany the draft or check, such rule constituted a part of the contract, binding equally on the bank and the depositor; and hence the bank had no authority to deplete such deposit by charging against it certain notes executed by the depositor to a third person and payable at the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1159, 1162–1164, 1166–1168, 1172–1176; Dec. Dig. § 301.*]

Action by Elisa Heinrich, as executrix of Jacob Heinrich, deceased, against the First National Bank of Middletown. Verdict for plaintiff.

Servin & Cox, of Middletown, for plaintiff.

Watts, Oakes & Bright, of Middletown, for defendant.

TOMPKINS, J. At the close of the trial, counsel for both sides asked for a direction of a verdict, whereupon a stipulation was made and entered upon the minutes that the court should direct a verdict and reserve its decision thereon, and that when the court should make its decision, it should be entered upon the minutes as of the date of the trial.

[1] The plaintiff's testator was the assignee of one Charles Hagen, who, prior to October, 1911, had a general check account with the de-

fendant, First National Bank of Middletown, N. Y. In October, 1911, the said Charles Hagen opened another account with the defendant in its "interest department," and deposited therein the sum of $4,000, which was entered in a special passbook No. 335, and which account was in the nature of a savings account, paying interest, and subject to the rules and regulations printed in the said passbook, and not to be checked out as are ordinary check accounts. This second account was in a special interest department of the bank, and was governed by rules entirely distinct and separate from those that controlled the general check accounts.

The rules and regulations respecting this special interest or savings account No. 335, we shall advert to, after a summary of the other facts of the case is given.

On December 22, and 23, 1911, the said Charles Hagen made three promissory notes to the order of Gouverneur E. Smith & Co., for the sum of $1,000 each, payable at the said First National Bank of Middletown, N. Y., four months after their respective dates. These notes were never owned by the defendant, but came to it from other banks for collection, on or before the 22d and 23d days of April, 1912, when they became due.

On the 21st or 22d day of April, the defendant bank received from Gouverneur E. Smith, the payee of said notes, two checks, drawn on the Suffolk County National Bank, of Riverhead, Long Island, aggregating $3,003, for deposit in Hagen's general check account, for the purpose of making that account good for the payment of the said three promissory notes. The bank, instead of receiving the said checks for collection, immediately gave Hagen credit for them in his check account, thereby providing sufficient funds in said account to meet and pay the said three promissory notes, and the bank thereupon charged the said notes against Hagen's said check account, and canceled them by means of a perforated stamp; and suitable entries were made in the books of the bank, showing that Hagen's general account had been credited with the said checks, and charged with said notes, and that said notes were paid.

On April 23d the defendant, instead of sending these two Gouverneur E. Smith & Co. checks direct to the Suffolk County National Bank, at Riverhead, Long Island, for collection, sent them to its correspondent, the Market Street National Bank, of Philadelphia; but they were never received by that bank, and concededly were lost in transit, and were not found until February, 1913. Hagen did not have notice that they had been lost until May 8, 1912. On June 5, 1912, Gouverneur E. Smith & Co., the maker of the said notes, went into bankruptcy, and the checks were never paid. On the next day, June 6, 1912, the defendant, without Hagen's knowledge or consent, charged the amounts due upon said three promissory notes to Hagen's savings and interest account No. 335, in which account there was more than enough money to meet said notes.

It is not disputed that Gouverneur E. Smith & Co., up to about June 5, 1912, when the concern went into bankruptcy, had sufficient moneys on deposit in the Riverhead Bank to meet the checks, had they been

presented for payment. After it was known that the Smith & Co. checks were lost, the defendant bank requested Smith & Co. to stop the payment of said checks, which was done, and the defendant never presented the said checks for payment, and never proved their loss or offered to Smith & Co., or the Riverhead Bank, a bond or undertaking indemnifying them from loss by reason of the miscarriage of said checks.

On June 6, 1912, when the defendant bank learned of the insolvency of Smith & Co., it wrote to Hagen as follows:

"According to information received from you, the checks of G. E. Smith & Co. to pay on your notes in the amount of $3,000 came duly to hand. These checks were credited to your account and the amount of notes charged to same. The checks, as you know, were lost in the mail and we applied to you to make good this amount, and have asked G. E. Smith & Co. to send duplicates, but we have been unable to get the duplicates of them and this account properly adjusted by either you or Smith & Co. We were acting as your agent in the premises and have therefore charged your special account with the amount of your notes."

Upon receipt of this letter, Hagen disclaimed liability, and protested against the threatened action of the bank, and gave notice that he would hold the bank liable for the balance in his savings or special account, and refused to allow the bank to enter in his passbook No. 335 as a charge against the balance to his credit in said account, the amount due on said promissory notes. Thereafter said Hagen duly assigned the said special account to the said Jacob Heinrich, the plaintiff's testator, and on September 14th he demanded of the defendant the balance to the credit of said special account, which was refused, and thereupon this action was commenced, after which the said Jacob Heinrich died, and his executrix substituted as plaintiff herein.

The defendant attempts to justify its appropriation of Hagen's special savings and interest-bearing account, and the payment therefrom of the said promissory notes, nearly a month and a half after they had become due, and had been charged to Hagen's general check account, and been canceled and marked upon the books of the bank as paid, upon the theory that Hagen, on June 6, 1912, when the charge was made against his special savings account, was a debtor of the bank to the amount of the aggregate of said notes. This claim, it seems to me, is not sound. The notes were charged up to Hagen's general account on the days they became due, and at times when there was sufficient on deposit to the credit of said account to pay said notes in full, and they were thereupon marked paid and canceled. Thereafter, the bank's only claim against Hagen was by reason of his indorsement of the Smith & Co. checks, which had been deposited to the credit of his general check account, but no claim is made against the plaintiff's assignor, Hagen, in this action, by reason of his indorsement of said checks, and no counterclaim has been asserted against the plaintiff on that account, and it is doubtful whether such a claim could have been successfully made against Hagen, for the reason that the defendant was negligent in sending said checks by the roundabout way of Philadelphia, instead of sending them direct to the Riverhead Bank, or through a nearby bank for collection, and in failing to collect said checks during the

month and a half that intervened between its receipt of them and the failure of the maker, Smith & Co.

[2] But whether the bank had a right, on June 6, 1912, to treat Hagen as its creditor to the amount of said notes or not, I am convinced that it had no right, without Hagen's consent, to appropriate money from his savings account, and pay said notes therewith. This was a special account, evidenced by a passbook, on the outside cover of which is printed the following statement:

"Interest Department.

"Read this Book carefully. If you lose or mislay it, give immediate notice to the Bank."

"Drawing Money.

"In all cases where money is withdrawn, this Book must be presented at this Bank to have payment entered."

"Form of Draft.

"Interest Department.

"The First National Bank:

..........., 191..

"Pay to the order of ......................., ........................... Dollars, $...... and charge to Book No. ......."

On the first account page of the passbook is printed the following statement:

"This account is opened subject to the rules printed on first page."

On the first inside cover is printed the following statements:

"Rules Governing Depositors in Interest Department.

"Deposits in the Special Interest Department of This Bank are made and received on the following terms."

Then follow rules as to the payment of interest, payment of drafts against the account, banking hours, force of these rules and manner of altering them, among which is the following rule:

"And in each instance, in withdrawing moneys, the passbook must accompany the draft or check."

These rules constitute a contract between the bank and the depositor, equally binding on each. These rules are similar to the rules adopted by all savings banks in this state, and the same is true as to the form of draft suggested. The bank might waive the production of the passbook when paying a draft drawn against account No. 335, but it had no right to pay any money out of this account without the order of Hagen. Munger v. Albany City National Bank, 85 N. Y. 580; Duncan v. Brennan, 83 N. Y. 487; Wyckoff v. Anthony, 90 N. Y. 442.

Both Hagen and the defendant treated these two as separate and distinct accounts, as they were in fact. The two Smith & Co. checks were deposited in the general account for the very purpose of being used to pay the notes, and the defendant immediately so used them. It could have refused to do so until after they were collected, but it treated them as cash, and so referred to them in its note to the Market Street Bank, of Philadelphia, asking why it was not credited with the inclosures in its letter of April 23d.

My conclusions are that on June 6th, when the defendant bank charged these promissory notes to Hagen's savings account, he was not the bank's debtor by reason of said notes, and that, even had the bank been his creditor by reason of the loss and nonpayment of said checks, it had no authority, without Hagen's consent, to pay these out of the special savings account. The defendant waived its right to 30 days' notice of the plaintiff's assignor's intention to withdraw account No. 335, by its absolute refusal to pay, and by its unlawful use of the moneys on deposit in said account. Wykoff v. Anthony, 90 N. Y. 442.

As the plaintiff's claim is on the passbook of account No. 335, and not in conversion, she is entitled to judgment for the full sum of $3,-279.94, which includes interest computed according to the rules set forth in the passbook, and a verdict is therefore directed in favor of the plaintiff and against the defendant for a said sum of $3,279.94.