In Special Term—March 1855.

GHOLSON, J. presiding.

## G. W. LAMSON *vs.* JOHN PFAFF.

[Lost acceptance.]

P. sent L. an acceptance filled up payable to L.'s order, with the date, place, time of payment, and amount, and accepted by P. himself across the face; the place for the drawer's signature being left blank. This never came to L.'s possession.

*Held:* That an unconditional recovery might be had at *law,* by L. against P., upon the lost acceptance.

That the principle which estops the acceptor from denying the *drawer's signature,* does not extend to endorsements; though the drawer's signature and the endorse

57

G. W. Lamson *vs.* John Pfaff.

ment are in the same handwriting; and that the acceptor may show the endorsement to be forged.

The Code, in abolishing all distinction between forms of actions at law, and suits in chancery, leaves the *rights* of parties to be adjudicated upon the same principles as formerly; and if the right to recover at law, before the Code, was clear, no power is vested in the Court, by the Code, to refuse a recovery upon the same principles now.

This was an action against the defendant as the acceptor of a bill of exchange, remitted by mail to the plaintiff, and alleged to have been lost. The proof showed, that the plaintiff and defendant had been dealing together for several years. That by an agreement between them, payment for bills of goods sold by the plaintiff to the defendant, was made by means of remittances of drafts, accepted by the defendant, made payable to the order of the plaintiff, filled up as to date, time of payment, and amount, but the place for the signature of the drawer left in blank.

The following is a copy of the draft sent:

"New York, May 25th, 1854.
$726.59.

Six months after date, pay to the order of G. W. Lamson, Seven Hundred and Twenty six $\frac{59}{100}$ Dollars. Value received.

To John Pfaff.
          Cincinnati, Ohio."

On the face of the paper was written "Accepted, John Pfaff."

It appeared from evidence on the part of the defendant, that the paper had been duly remitted to the plaintiff, by mail, according to his instructions in writing. And from evidence on the part of the plaintiff, that the paper had never been received, and, though enquiries and search had been made for it, in different ways, could not be found.

G. W. Lamson *vs.* John Pfaff.

The defendant was willing and had offered to pay the amount upon an indemnity being given, but this was declined. And the present action has been brought, the question between the parties being, whether the defendant is entitled to an indemnity from the plaintiff, against any liability or charge to which he may be subjected upon the lost paper.

The case was submitted to be tried by the Court.

GHOLSON, J.

The acceptor of a bill of exchange, who pays the amount for which it was drawn, without having the bill produced and *delivered up to him,* may be prejudiced, by being compelled to pay the same amount to a *bona fide* holder; if under the circumstances, in fact existing, no person can set up a title to the bill as a bona fide holder, still the acceptor may be prejudiced by being compelled to establish in proof such circumstances, in order to rebut and answer the prima facie case which the possession of the bill creates; and, indeed, the proof may entirely fail from the death of witnesses, or otherwise. The acceptor has, too, where he is compelled to pay on proof of circumstances, showing that he would not be liable on the production of the bill, to incur the risk of the testimony establishing those circumstances, being disproved or discredited. It is not perhaps going too far to say, that in every case, the acceptor *may* suffer damage or loss from the failure to produce the bill and deliver it to him as his voucher. This possibility of loss or damage would of course vary with the circumstances of each case, and in some might become extremely remote.

It would appear to be just to require of the party who

receives the money on a lost bill or note, in every case, to enter into an undertaking, to indemnify not only against any liability to pay it again, but against any charge or expense, which the existence of the paper in the hands of a third person might produce. To such an undertaking sureties for a compliance with it, might or might not be added, as the circumstances of the transaction or the parties indicated to be proper, in the exercise of a just discretion.

If I were at liberty to lay down the rule in such cases, I should be inclined to follow that adopted in the case of Hansard *vs.* Robinson, 7 *B. & C.* 90 ; 14 *E. C. L.* 20, and recently confirmed, on full consideration, in the case of Ranney *vs.* Crowe, 1 *Exch. Rep.* 167. Under our present system of practice, the operation of a rule which would place the liability to pay the amount of any negotiable security, without a production and offer to deliver up the instrument itself, upon an equitable instead of a legal ground, would be attended with no practical inconvenience. And, as already intimated, the indemnity, which upon equitable principles would be required, might be suited to, and measured by the emergencies and circumstances of the particular case.

Under our present code of practice, we may decide in the same action, the legal and equitable rights of the parties, as the facts may require. But the Code was intended to alter rather the form of administering justice, than to change, substantially, the rights of parties, whether before denominated legal or equitable. If, therefore, before the Code a party had the right to recover the amount of a lost negotiable bill or note, without an offer or tender of indemnity, such right must be deemed still to exist.

In the case of Thayer vs. King, 15 *Ohio* 242, 246, it is said by the Court: " If the circumstances of the case are such, that the negotiable paper can never be produced for payment a second time, or, if produced, would permit no right of recovery in the hands of the holder, no indemnity in such case being required to guard against a second payment, recovery may be had in a court of law. Thus, if the instrument be totally destroyed, or if it pass into the hands of the holder, charged with all the equities which exist against the original holder, the action may be at law." Accordingly, in that case, a recovery was allowed, without indemnity, upon three lost negotiable notes, endorsed in blank, it being shown in proof by a witness, that the loss occurred after the notes had become due. This decision is in direct conflict with the cases of Hansard vs. Robinson, and Ranney vs. Crowe. It is obligatory on me, and the only question is, whether the principle embraces the present case. If it does, then, as I have before stated, there is no power conferred on me by the Code to impose any condition to the assertion of a legal right which was not required before, and for which no provision is made.

If the evidence in the present case is to be credited, the bill, though made negotiable, was at the time of its loss unendorsed; and no person could show, even an apparent legal title to the bill, without a forgery of the name of the plaintiff. This case falls within that class mentioned in Roet vs. Watson, 4 *Bingh.* 273 ; 13 *E. C. L.*, and of which that was one where the bill at the time of the loss was in such a state as not likely to be used against the acceptor. And such cases are considered in the authorities as not presenting so strong a ground for indemnity, as those of bills endorsed in blank and lost before they

fell due. 2 *Greenl. Ev.* § 156. The present case, and that of Roet *vs.* Watson, are very similar, and in that case a recovery at law was allowed in England, on the ground that the bill, when lost, had not been endorsed.

It may be proper to observe, that the case of Roet *vs.* Watson was decided before Hansard *vs.* Robinson, and in Ranney *vs.* Crowe, is considered as having been overruled. And I may also state, that according to the principle of the two last cases, the objection to a recovery at law on a lost negotiable bill against the acceptor, does not depend on the difficulty growing out of the question of indemnity, which appears to be the view taken of the matter in the case of Thayer *vs.* King, 15 *Ohio* 246. On the contrary, the objection is, that according to the law merchant, it is a part of the contract, that the bill must be produced and delivered up as a voucher. If from accident or misfortune, a party cannot comply with these conditions of his contract, a court of equity may, upon proper terms, grant relief; but a court of law must enforce contracts, as the parties and the law have made them, and can properly exercise no such power.

In view of the principle of the decision in Thayer *vs.* King, I am unable to see why, if a recovery at law, or without indemnity, was permitted in that case, it can be denied in this case. It has been urged by the counsel for the defendant, that the circumstance of the drawer's name being in blank, alters the case. That if any one who might obtain the paper, should sign the name of the plaintiff or a similar name, and then endorse the bill in the same handwriting, this would operate as an estopel, both as respects the signature of the drawer and endorser. That though this would undoubtedly be a forgery of the name of

the plaintiff, yet a bona fide holder might rely for recovery on the similarity of the handwriting of the drawer and endorser.

This argument is ingenious, but it does not appear to me to rest on any sufficient foundation. Without enquiring how far it would be proper to rely on a comparison of handwriting, to show that the name of the drawer and of the endorser was written by the same person, it is, I think, quite clear, that the acceptor in the case supposed would not be precluded from showing that the signature of the endorser was not genuine. The admission by the act of acceptance of the signature of the drawer, is not in itself an admission of the endorsement, though the same name be signed in both cases.

The case of the Canal Bank *vs.* the Bank of Albany, 1 *Hill* 287, was, substantially, such a case. In that case the name of B. appeared as the drawer and first endorser. The endorsement was forged, and a party who had paid the bill, which operated, the Court said, in this respect, the same as an acceptance, was allowed to show the forgery for the purpose of recovering back the money, the payment being no admission of the genuineness of the endorsement. The case of Allport *vs.* Meek, 4 *C. & P.* 267; 19 *E. C. L.* 378, is still more analogous. In that case, the acceptance having been proved, and the drawing and endorsement purporting to be by the same party, it was contended, that, as the acceptance admitted the drawing to be correct, the jury might find for the plaintiff, if they thought, upon inspection of the bill, that the drawing and endorsement were of the same handwriting; but Tindal, C. J. said to the counsel, " You must call some witness to lay some evidence before the jury, on which they may decide; " and the plaintiff was non-suited.

There could be no recovery on the instrument alleged in this case to have been lost, without the endorsement of the plaintiff; the evidence clearly shows that at the time of the loss there was no such endorsement; if one should be forged, there could be no title derived through it, even by a bona fide holder. Against any one, therefore, upon the proof of the facts, the recovery in this action and payment to the present plaintiff, would be a complete bar. This brings the case entirely within the principle of Thayer *vs.* King, by which I must be governed, and there must be an unconditional finding in favor of the plaintiff for the amount claimed, with interest.

R. D. & J. H. HANDY for plaintiff.

HAINES, TODD, & LYTLE for defendant.