Speab, J.
(dissenting). This case was first tried in the superior court upon a demurrer to the petition. The demurrer was sustained, and a judgment entered for defendant. Error was prosecuted to the district court, in which court the judgment below was reversed, and the cause remanded for trial. The ground of reversal (opinion in 9 Law Bulletin, 361) seems to have been that the certificate was, in legal effect, a demand note, and overdue at the time of the alleged loss. Upon trial, the superior court, yielding its judgment to the authority of the district court, found the facts and rendered the judgment as given in the statement which precedes the majority opinion.
*50 I think .the superior court was right in its holding upon the demurrer. The petition showed that the condition of payment contained in the certificate had not been complied with by the holder. This disclosed a state of facts which precluded a recovery at law. And there being no equivalent to a return of the certificate offered, i. e., no tender of indemnity, the petition failed to make a case in equity, and hence th’e demurrer was properly sustained. The fact that under our practice the distinctions between equitable and legal forms are abolished, and that equitable and legal rights may be enforced in the same forum, in no way aids the petition, or affects the question. If the plaintiff’s action was a legal one, it invoked the powers of the court as a court of law, and was triable by a jury; if an equitable one, it invoked the equity powers, and was triable by the court. If the facts disclosed by the petition showed that no case was made for relief at law, then, unless the infirmities of the plaintiff’s cause could be cured in equity, he had no case for the court to act upon. Cases involving the ordering of indemnity have never been, in this state, cognizable at law, or triable on the law side of the court. A court of law renders judgments for the unconditional payment of money, but does not impose conditions.
The assumption of the district court, as to the certificate, embodied in the subsequent finding of the trial court, was, it seems to me, unfounded. That instrument was not past-due paper at the time of its alleged loss, and the demand by Brown, without the paper, could not cause it to mature, especially if the condition “ on return of this certificate” is to be given its legitimate effect. Neither could mere efflux of time have that effect. About forty days had intervened from the date of issue at the time of the attempted demand. The certificates represented moneys left for safe-keeping, to be retained until actual demand, and, according to its terms, .the certificate would not be dishonored until presented.' Certificates of this general nature have been held to be, in legal effect, promissory notes. Such was the character given the certificate in dispute in Howe v. Hartness, 11 Ohio St. 449. That certificate bore interest, and payment was not subject to the condition, “on return *51 of this certificate.” It hardly advances the inquiry to call such a paper a negotiable promissory note. Cases are to be found which decide the point opposite ways. Needless attempts at classification, and the vague use of terms, often tend to confuse rather than to enlighten, and may, with safety, be avoided. In Massachusetts, by statute, it is provided that in an action on a note, payable on demand, brought by the indorser against the maker, any matter shall be a defense which would be had suit been brought by the payee, except matter arising after notice of the transfer. In Shute v. Pacific National Bank, 137 Mass. 487, it was held that certificates of deposit, similar in form to the one in the case at bar, were not promissory notes within the meaning of that statute, and that such certificate “ is not due until demand is made and the certificate returned or tendered.” Such certificates, “though having in most respects the incidents of promissory notes, and classed as such, differ from common promissory notes in important particulars. Such a certificate is not merely a promise to pay a certain sum, but it declares that a certain fund has been deposited, which is payable to the depositor, or his order, on the return of the certificate, properly indorsed.” Probably, it is sufficient to say that the current of authorities treats such certificates as negotiable paper.
But whatever this certificate is called, in determining the rights of the parties, their relation to one another, and to the contract, and their intention in making it, as gathered from the character of the agreement and the language used, must be considered. Their relation is rather that of depositor and bailee, than of lender and borrower; the transaction more resembles a deposit than a loan. At all events, the paper cannot be what the district court (and what, judging by the conclusion reached, the majority of this court) seemed to think it, “ in legal effect a promissory note payable on demand.” . If the transaction had been a simple loan, no time for payment having been fixed, the paper might have been treated as a demand note; the debt would have been due at once, and action could have been brought, which itself would have been a sufficient demand, but being a deposit, rules, applicable to bailments, rather *52 than those applicable to loans, apply especially in determining as to the maturing of the obligation. The contract between the depositor and the bank is not one of strict bailment, because the deposit is not necessarily to be returned in specie, and yet, in all other respects, the contract is similar to that of bailment. The deposit here was for the benefit of the depositor. The depositary was to safely keep, but without compensation. The distinction between an ordinary loan of money, and a deposit of money which the depositary has the right to use, is an important one, and should not be lost sight of. Ordinarily, a loan is made at the request, and for the benefit of, the borrower, while the deposit is usually for the benefit and accommodation of the depositor. In the former case, as already stated, where no time of-payment is fixed, the obligation becomes instantly due, and the beginning of an action is a sufficient demand to warrant a recovery; in the latter case a demand is absolutely necessary to perfect the liability of the depositary. Bronson, J., in Downes v. Phoenix Bank, 6 Hill, 297, gives as a reason why a special demand should be made in such a case, “ that no one could desire to receive money on deposit for an indefinite period, with a right in the depositor to sue the next moment, and without any prior intimation that he wished to recall the loan.” This reason seems conclusive. In Munger v. Albany City National Bank, 85 N. Y. 580, the court holds that “ there is no right of action upon a certificate of deposit in ordinary form, issued by a bank, until demand of payment.” In the opinion, Folger, J., remarks that u as the certificate of deposit was a negotiable instrument, and was by its terms payable only on the return of it to the bank that had issued it, it never accrued due and payable, never matured until a return of it, and demand of payment made of it.” For full discussion of this phase of the question see opinion of Mullin, J., in Payne v. Gardner, 29 N. Y. 167,
In Bellows Falls Bank v. Rutland County Bank, 40 Vt. 377, suit was brought on a certificate, in most respects similar to the one in the present case, though not so definite in its terms, without alleging a previous demand. The declaration was held bad on demurrer. Wilson, J., in the opinion uses this *53 language: “ The only remaining question necessary to consider is, whether a special demand is necessary before bringing suit, and this question depends entirely upon the construction to be given to the instrument. It is claimed by the plaintiffs that the transaction between Clark and the defendants is to be deemed a mere loan of money, where payment becomes presently due, and that an action may be brought without previous demand of payment. * * * But it seems clear to us that the transaction in question is not a loan, but a deposit, and the rights and liabilities of the parties are to be ascertained and governed by rules of law applicable to this sort of bailment. A deposit is defined to be a naked bailment of goods to be kept without recompense, and to be returned when the bailor shall require it. Story on Bailment. In the construction of this contract, as of all others, the intention of the parties must control, especially where their intention is apparent upon the face of the instrument. The defendants, in and by the instrument, say that ‘ O. B. Clark has deposited in their bank $1,100, payable to the order of himself on presentation of this certificate properly indorsed.’ The instrument, construed according to its legal effect, constitutes a deposit; but it is clear that it leaves the period of time the bailment shall continue indefinite. The provisions of the instrument constitute an agreement-to pay the money when Clark, or his indorsee, presents the certificate to the bank for payment, properly indorsed. The time when the instrument is due, by its terms, is ascertainable only by an actual presentation of it to the defendant’s bank, properly indorsed, and call for the money. There is nothing in the transaction to distinguish it from a naked bailment, for the exclusive benefit of the depositor, and in such cases a demand is generally necessary to perfect a right of action against the depositary. In this case it is clear, upon principle, that no action should be allowed against the defendants without a previous demand, and, we think, this view of the subject will give operation to the instrument according to its legal effect, and the obvious intention of the parties.- * * * Cases are cited by the plaintiffs’ counsel to the effect that in an action on a promissory note, payable *54 031 demand at a partículas: place, no special demand is necessaiy before bringing suit, and none need be averred. These cases arc applicable where the note or other instrument creates a debt, which, according to the legal effect of the instrument, is presently due, but they can have no application to the instrument on which the plaintiffs in this case seek to recover.” See, also, Fells Point Sav. Ins. of Baltimore v. Weedon, adm’r, 18 Md. 320; Sanbourn v. Smith, 44 Iowa, 152; Herrick v. Wolverton, 41 N. Y. 581, and Watson v. Phoenix Bank, 8 Met. 217.
The bank, in such ease, is not bound to hunt up the payee and make payment. On the contrary, the payee is bound to present the paper at the bank and make demand of payment there, and until this is done no right of action at law would accrue upon the paper, nor would the statute of limitations begin to run. Howell v. Adams, 68 N. Y. 314; Boughton v. Flint, 74 N. Y. 476; Nat’l Bank of Fort Edward v. Wash. Co. Nat’l Bank, 5 Hun. 605. In Girard Bank v. Bank of Penn Tp., 39 Pa. St. 92, Sti;ong, J., observes: “ It (the bank) is a mere custodian and is not in default or liable to respond in da3nages until demand has been made and payment refused. Such are the tenns of the contract implied in the transaction of receiving money on deposit, terms necessary alike to the depositor and the banker. And it is only because such is the contract, that the bank is not under the obligation of a common debtor to go after its customer and return the deposit wherever he may be found. Hence, it follows that no right of action exists, and the statute of limitations does not begin to run until the demand stipulated for in the contract has been duly made.” The certificate of deposit ivas, therefore, not duo at the time of the alleged loss, and if any effect at all is to be given to the stipulatiosi “ payable to the order of himself on return of this certificate,” it was not due on the 18th of September, 1882, when plaintiff asked the bank to pay him the mo3iey without complying with that stipulation, or attempthig to furnish any equivalent, nor was it in law due at the time of the commencement of the action.
*55 I maintain that the term, “ payable to the order of himself on return of this certificate,” cannot be rightfully disregarded. Though it be held that the clause does not destroy the negotiability of the paper, still it by no means follows that it is to be treated as of no effect, and the instrument construed as though it were absent. It is easy to say that it is the duty of every holder of a promissory note on payment to deliver it up to the maker, and that the clause referred to is no more than would be implied as to every note. This implication is put in the following language by Peck, J., in Smilie v. Stevens, 39 Vt. 315: “ It is the duty of the holder to deliver up a negotiable promissory note or bill on the payment of it by the maker, as a voucher for his security, or show a sufficient excuse for not doing so.” If satisfied with the implication referred to with its qualification, “ or show a sufficient excuse for not doing so,” why put in the express stipulation ? Its presence here indicates that the parties relied upon it as important. Why should we infer that they intended to do a mere vain, frivolous thing ? It may have been that this qualification, and the holding of some courts upon certificates not containing such return clause, caused the parties in this case to make the express provision in this certificate. Clearly they had the right to do so; is it as clear that this court has the right to say that such careful forethought shall be of no avail ? Of course it can arbitrarily decree this. But should it be done ? The parties undertook to provide in the paper the protection the bank should have upon returning the money. The effect of the judgment in the case is that such protection shall not be afforded, and no other protection shall be given in its place. This manifest intent, therefore, of the parties is overslaughed. In the case of Patterson v. Poindexter, 6 Watts & Sergeant, 227, Chief Justice Gibson, in construing'the meaning of the word “ payable ” in a certificate of deposit, treats the subject in this manner: “ Where the parties have used it in its natural sense, by what authority shall we, who profess to be guided by the intention as the polar star of interpretation, say that they have used it in a different one?” And here we ask, in the same spirit,, why should this court, which ought to be governed by the *56 same “ polar star ” in arriving at the proper construction of contracts, arbitrarily say that these words mean nothing, or that their meaning is different from the natural import, and thus fritter away this important provision by construction ?
Tiic court is not called upon to strain the law in order to assist the plaintiff out of a possible hardship, nor is it to be at all influenced by the consideration that one party may have more ability to stand a loss than the other. Parties themselves make the circumstances. Courts are in no way responsible for them, and when a like case arises again it may show a reversal of the condition of the pari.lea.,
Piad the court seen fit to hold that the return clause in this certificate deprived the paper of the attribute of negotiability, it is probable that the bank would have been fully, protected in payment to Brown without a return of the instrument, and Brown at the same time relieved of the effects of his claimed misfortune. There is authority for such holding. The supreme court, sitting in Hamilton county, in Austin v. Miller, 4 Western Law Journal, 527, held, “ that a certificate of deposit of money in bank, payable to the order of the depositor, with interest, at a future day, on return of this certificate, was not negotiable so as to charge the indorser.” In Patterson v. Poindexter, 6 Watts & Sergeant, supra, the court held a certificate having a like clause to bo “ a certificate of deposit on special terms,” “ negotiable for purposes of transfer only,” but not to hold an indorser. This court was, therefore, at liberty to hold the certificate in the case at bar, non-negotiable, though it is conceded that the weight of authority out of this state is the other way. Indeed, it may be conceded that precedents can be found in the books for almost any possible claim as to many of the questions mooted here. There is great contrariety of view, not to say irreconcilable conflict, in ihe decided cases.
Nor can the case of the defendant in error be'maintained upon the claim and finding that the certificate was unindorsed at time of alleged loss. The record in this case binds none but the parties to it. It is possible, we need not say probable, that the certificate may have been indorsed for value by the *57 payee before loss. If so, the holder could recover, and payment to Brown would not furnish a shadow of a defense. But even if not indorsed by his genuine signature heretofore, it is possible to be put on hereafter, and even upon a forged indorsement the bank could be put to the trouble and expense of defending an action with the possibility and risk of an erroneous finding of the fact against it.
Perhaps no case is likely to arise where the danger of adjudging unconditional payment would be more apparent than, the one we are considering. By the testimony of the plaintiff (a bar-tender) it appeal’s that at the time of the alleged loss of the certificate he was intoxicated. He got on a street car in Cincinnati, corner of Fifth and Walnut streets, about 11 o’clock Saturday night, went to sleep and rode away past his home, to the end of the route. There he was awakened by the conductor, had a little trouble about paying fare, and rode back. He was unconscious nearly all the time he was on the car. Whore he went after getting off, does not appear, though he appears to have been at home the next morning, when he discovered the loss of the pocket-book containing the paper. He left the place of his employment about 7 o’clock in the evening, and was at many other saloons and was drinking freely. Some young country friends were in town and he was out with them, and talked with many other people. An uncle (a manufacturer and peddler of a patent medicine called “Allen’s Lightning Cure ”) accompanied him. At one saloon they stayed some time, and there the uncle was shown the certificate. He took it in his hands and handed it right back. He did not look to see whether it was indorsed or not, but saw no indorsement. From this saloon he went with the plaintiff to the corner of Fifth and Walnut, where the latter took the car, and the uncle saw no more of him that night. The plaintiff was positive that he did not indorse the certificate, but what he did, or where he was, after parting with the uncle, is unexplained, except as before stated, and his admitted condition would seem to make his assertion as to any definite recollection of what was done with the certificate doubtful, if not entirely untrustworthy. Of course the bank *58 could adduce no testimony to contradict this, and upon it the finding was had that the certificate had been lost, and that it was not indorsed at the time; and upon such finding, based upon such testimony, unconditional judgment is rendered. Not only is the bank not to have any indemnity, but it is to pay interest from the date Brown asked for the money, and all costs. The poor privilege of holding Brown’s own bond of indemnity, • even, is denied; so that, in case it shall turn out that some person in the future may present this certificate with the payee’s genuine indorsement upon it, and compel the bank to pay to him, there would be no probability of recourse on Brown, for the present judgment settles that, as between the parties, the certificate was lost and was not then indorsed. A person holding this certificate rightfully has the right to hold it indefinitely, subject possibly to the duty of presentation within a reasonable time. What the limit is, if that rule applies, is a matter almost wholly of conjecture, and all risks, as to whether a plea of unreasonable delay in presentation would be held a bar, are on the bank.
In Nat’l Bank of Fort Ed. v. Wash. Co. Nat’l Bank, supra, the action was upon a certificate of deposit issued April 4, 1863. A payment was made by the bank to the payee on the 20th of September, 1864, but not indorsed. October 20th, 1870, the certificate was transferred for value to the plaintiff, without notice of the payment. The defendant set up that the certificate was dishonored, an unreasonable time (seven years) having elapsed before transfer, and asked to have the payment deducted. But the claim found no favor with the court. It said: “ The depositor puts his money in the bank for better security, instead of keeping it himself. And when he actually demands it'the bank is to pay; not before. The bank may, also, give a certificate of deposit. When they do this, and when; as in this case, they make the certificate payable on its return, properly indorsed, they have then added to their original undertaking as a depositary, an agreement that they will pay the deposit to the holder of that certificate, properly endorsed. They are, therefore, under a liability as depositary, to be ready to redeliver the money whenever de *59 manded; and further, to deliver it to any holder of that certificate, properly indorsed. It follows, therefore, that they are liable to a bona fide holder of the certificate, notwithstanding a payment to the original depositor. It was urged by the defendant that the certificate was payable forthwith; that after the lapse of an unreasonable time (in this case seven years) it was presumed to be dishonored, and, therefore, that the assignee took it, subject to all equities. We think not. The very nature of the instrument, and the ordinary mode of business, show that a certificate of deposit, like a deposit credited in a pass-book, is intended to represent moneys actually left with the bank for safe keeping, which are to be retained until the depositor actually demands them. Such a certificate is not dishonored until jwesented. Our statutes recognize depositors as a distinct class from other creditors, and sometimes give them special privileges; and this is because, although in fact the bank is a debtor, yet it is supposed to be more, and to be a depositary, liable to redeliver, at any time, on demand.55 In Girard Bank v. Bank of Penn Tp., supra, action was upon a certified check, dated October 7, 1852, presented September 19, 1859. Money had been paid to original depositor, bond being taken. The court held that “ checks on a bank marked f good5 are to be regarded as evidences of deposit to the credit of the holder, and laches in making a demand for payment is no more imputable to him than to any other depositor. * , * * Upon the whole, we find nothing in the adjudicated cases which requires us to hold that a depositor is barred of his action against his banker by delaying to call for his deposit more than six years from the time he placed the money in bank, and we think such a doctrine would be alike impolitic and unjust.55 See, also, Pardee v. Fish, 60 N. Y. 265. In Ohio, the statute of limitations does not run against paper of this character until the lapse of fifteen years after maturity.
It seems manifest that the only safe, reasonable and just course regarding actions upon instruments like the one in this case, lost Before maturity, is to treat them as equitable claims, and make payment depend upon indemnity, at least such, as the party -may be able to give. Judge Gholson was of opinion *60 that this rule should apply to notes and bills generally, where lost. In Lamson v. Pfaff, 1 Handy, 449 (which was upon a lost bill of exchange), he suggests, that in every case upon a lost bill or note, whether lost before or after maturity, it is but fair to require the plaintiff to indemnify the maker, as well against charges and expenses of possible litigation, as against a liability to pay a second time; that the liability to pay where the paper is not produced should be placed on equitable instead of legal ground, and that the indemnity required “ might be suited to and measured by the exigencies of the particular case,” the party being required to add sureties to the undertaking or not, as the circumstances indicated to be proper, in the exercise of a just discretion. Judge Story, in his work on Equity Jurisprudence, secs. 85 and 86, lays down the same principle as the true rule. The case here does not require.so extreme a rule, but if it be a proper rule as to all lost instruments, a fortiori is it a proper one in a case like the present. In England recovery cannot be had at law on a note lost before maturity, whatever the proof may be as to indorsement. Ramuz v. Crowe, 1 Exch. 167. In California, in Massachusetts, and in New York (by statute), security is required. Welton v. Adams, 4 Cal. 37, is in point. The action was like the one at bar, except that in one particular it was stronger for the plaintiff. Instead of a lost certificate, it was proven to have been destroyed. The judge, in the opinion, says: “It is undeniable that, upon payment of a note or bill, the maker or acceptor has a right to its possession, as a voucher of its payment. Can this right be taken away without an equivalent? It is said that proof of its destruction is a sufficient assurance that it can never afterwards appear. But, when we reflect upon the uncertainty and fallibility of all human testimony, it looks unjust to force the risk of its reappearance upon a party totally innocent of fault, and who has not bargained with a view to any mischance which may, in the future, result to his injury. I think there never can be, to him, that assurance óf the loss or destruction of the paper, as should force him, against his will, to take the peril, either of defending an action thereafter, or of repaying the amount. The *61 negligence or misfortune of the holder ought not to- give him the right of casting such a burthen upon the maker.” This doctrine was approved in Price v. Dunlap, 5 Cal. 483, and in Randolph v. Harris, 28 Cal. 561.
It is insisted that the question is disposed of in favor of defendant in error by Thayer v. King, 15 Ohio, 242. With due respect, I think this is not so, but that, on the contrary, this court is at liberty to apply to the case at bar a reasonable rule, and in doing so would not conflict with that decision. The authoritative law of that case is the judgment rendered upon the facts. The action was upon notes due the day of their date, indorsed from one to four years afterward, and soon thereafter lost. Manifestly, the court was dealing with a case essentially different from the one at bar. And yet the rule we contend for is fully recognized. The syllabus is: “An action will lie, at the suit of the owner of negotiable paper, which has been lost after it fell due, at law; but if lost before due, the remedy is in chancery, where the owner can be required to indemnify the maker.” Suggesting that it is the judgment on the facts, which controls, rather than the language of the judge who delivers the opinion, yet I direct attention to the following, taken from the opinion of Judge Eead, which seems to have been omitted from the majority opinion in this case:' “ Now, it is a well recognized principle, that negotiable paper received after it is due, is charged with all the equities existing between the original parties. So, if payment be made to the original holdei’, and a l’ecovery be had by him, it would constitute a complete bar to another action brought by any person who should receive it after due. But, if it be lost before due, and the original holder commence suit, there is a possibility that the paper may be outstanding in the hands of an innocent holder — upon which recovery could be had; and hence, the law will not permit, in such case, a .recovery to be had until complete indemnity is furnished against such possibility. Now, a court of law has not the power to compel this indemnity; and, hence, is forbidden to give judgment or to entertain jurisdiction of the case. A court of law proceeds upon fixed principles, and if the party *62 is entitled to judgment, lie is entitled to execution without limit or restraint. But, a court of equity, being called upon to give its aid, will guard the rights of all parties, and will not permit a recovery until the party seeking it will guard the opposite party from a danger which exists by the misfortune of the very person seeking its aid.”
It will be noted that the learned judge gives controlling importance to the consideration that “ there is a possibility that the paper may be outstanding in the hands of an innocent holder.” So, I contend here, that there is a possibility that this certificate may be in the hands of an innocent holder, and the court should not permit a recovery by the plaintiff until he shall guard the defendant from a danger which exists by the misfortune of the plaintiff himself.
The instance of a note payable to bearer and lost after due, is adduced, and it is suggested that such a note requires a physical presentation as much as a certificate of deposit u payable on its return.” The suggestion hardly aids the argument. The case put does not diifer, in principle, from Thayer v. King. We are dealing in this case with an instrument lost before due, and one which required presentation and demand to cause it to become due.
In conclusion, I must express regret that the court did not embrace the present opportunity to adopt a just and equitable rule as applicable to this class of cases. A rule of law which, in a case like the one at bar, relieves a party guilty of culpable negligence of all risk of the paper reappearing and serving as the basis of a claim against the maker in such form as to require him to defend an action and possibly repay the amount, and results in a record which screens such negligent party from liability in case such repayment is enforced, and 'places all that risk upon a party totally innocent of fault, and who not only has not agreed to assume it, but has distinctly and in terms bargained against it, is, I submit, unjust and inequitable.
Minshall, J., concurs in the dissenting opinion.