### WRIGHT *v.* HUBBARD.

ESTATES OF DECEDENTS—ALLOWANCE OF CLAIMS—EFFECT—SET-OFF —PAYMENT OF MORTGAGE.

*W. and wife executed a mortgage to P. Subsequently W. and P. agreed that P. should board at W.'s, and the price of the board should apply *pro tanto* in payment of the mortgage. P. assigned the mortgage, when past due, to her daughter. After P. died, W. procured administration of her estate. W. and wife presented separate claims against her estate, which were allowed. W. and wife then filed a bill in equity to procure a cancellation of the mortgage, on the ground that the allowed claims were of greater value than the mortgaged premises, and should be applied in payment of the mortgage debt. *Held:*

---

* Head-notes by GRANT, J.

1. The allowance of the claims by the probate court did not bind the assignee of the mortgage, who was not a party to that proceeding.

2. There was no agreement that compensation for the wife's services in caring for P. should be applied in payment of the mortgage, and her claim could not be made an offset to her husband's debt.

Appeal from Sanilac; Beach, J. Submitted March 8, 1901. Decided April 2, 1901.

Bill by Austin Wright and Elizabeth Wright against Estella J. Hubbard and Miles Simmons, administrator of the estate of Clarissa Poland, deceased, for the cancellation of certain mortgages. From a decree for complainants, defendant Hubbard appeals. Reversed.

Complainants are husband and wife. He owned a farm of 120 acres in Sanilac county, Mich. In 1888 he borrowed $1,900 of Mrs. Poland, the sister of Mrs. Wright, for which he gave two mortgages upon this land, —one for $1,100, and the other for $800. The mortgages were signed by Mrs. Wright. Mrs. Poland lived in Chicago. In July, 1891, she went to the home of the complainants,—whether first as a visitor, as claimed by defendant, is immaterial. She remained there until November, 1892, when she went to the home of her daughter, defendant Hubbard, in Chicago. Mrs. Hubbard visited her mother at complainants' home in the summer of 1892. An agreement was then made that Mrs. Poland should pay $10 a month for her board, to be applied on the mortgage debts. This was the usual price for board in that locality at that time. Board for 12 months for that time ($120) was indorsed on one of the notes, and $40 from July 28, 1892, to November 28, 1892, on the other note. Mrs. Poland remained with her daughter in Chicago until May, 1894, when she again went to complainants, and lived with them until December, 1895, when she returned again to Chicago. In August, 1896, she returned to complainants, intending

to take her household goods and return to Chicago to live. She was taken ill, and died at complainants' home, December 5, 1896. Mr. Wright applied for letters of administration upon her estate. Letters were issued, commissioners appointed, and Mr. and Mrs. Wright presented separate claims against the estate, which were allowed. There was no opposition to their allowance, no one appearing to defend them. Whether defendant Hubbard or any of her other children knew of this proceeding does not appear. They had no actual notice of the proceedings. On August 7, 1896, these mortgages and notes were assigned by Mrs. Poland to her daughter, Mrs. Hubbard. Within a few weeks thereafter complainants were notified thereof by Mrs. Poland.

Mr. Wright's claim was for "board, etc., funeral and probate expenses, $653.65." Mrs. Wright's bill was for "nursing, washing, etc., $2,977." After the allowance of the claims, complainants filed the bill in this case for the cancellation of the mortgages, claiming that they were paid by the board, nursing, etc., which had been allowed by the probate court. The bill does not expressly allege any agreement that the board and nursing were to be applied in payment of the mortgages. The only allegation in regard to the matter is this:

"That on or about the 7th day of August, A. D. 1896, the said Clarissa Poland assigned the said mortgages to her daughter, one Estella Hubbard; but such assignment was made without consideration, and after the maturity of all of said mortgage indebtedness that was remaining unpaid."

The defendant Hubbard, who is the only real and necessary defendant, answered, virtually admitting the agreement as to the board, but denied any payments by reason of nursing or attendance, and claimed the benefit of a cross-bill for a foreclosure of the mortgages. To the cross-bill the complainants answered, in which they aver:

"That, at the time said mortgages were assigned, the said mortgagee, Clarissa Poland, had received a large

126 MICH.—16.

amount of payments thereon by reason of said complainants' nursing, supporting, and attending said mortgagee, but the same had not been indorsed on said notes or mortgages."

The mortgages were past due when assigned. The land is not worth the amount of the claims allowed by the commissioners, and the court decreed that the mortgages should be canceled.

*Charles F. Gates* and *Arthur E. Divine*, for complainants.

*W. H. Burgess*, for appellant.

GRANT, J. (*after stating the facts*). 1. The proceedings of the probate court are immaterial to the controversy between the parties. Defendant Hubbard was not a party to the proceedings before the commissioners, and their finding does not bind her as the owner of the mortgages. The mortgages had been assigned to her. No claim is or can be made that she did not then become the owner of them, and entitled to all that remained due after deducting all legitimate payments. There was nothing in the proceedings before these commissioners, had she been notified thereof, that the claims were designed to offset her mortgages. It was unnecessary for Mr. Wright to have any claim allowed before the probate court under his agreement with Mrs. Poland that the price of her board should be applied *pro tanto*. In fact the estate of Mrs. Poland owed him nothing for the board, because he and Mrs. Poland had agreed to apply it on the mortgages. If there was a dispute as to how much the payments were, that question could only be settled in the foreclosure proceedings, or upon a bill filed by the mortgagor to annul the mortgages on the ground of payment. The questions, therefore, that are raised as to the validity of the proceedings before the commissioners, need not be discussed.

2. That there was an agreement to apply the board of Mrs. Poland upon these mortgages is conceded. It is

claimed by defendant that the first agreement for $10 per month covered all the time. During 1891 that was the customary price for board. It does not appear whether there was any change in the price afterwards. Nothing was said about the price on the other occasions, nor was any settlement afterwards made. Mr. Wright now claims $20 a month from May 20, 1894, to December 20, 1895, and in 1896. For board alone upon a farm, especially when Mrs. Poland furnished her own rooms, this would be extravagant. Considering that she was ill part of the time, and that her meals were served in her room, the price may thereby be properly enhanced, and we are inclined to let the amount stand at $20 per month. The expenses of the funeral were paid by Mr. Wright, and Mrs. Hubbard conceded that they might be allowed against the mortgages.

3. The record is barren of any language implying an agreement to pay Mrs. Wright for nursing, and apply the same upon the mortgages. Whether her claim was a legitimate one against Mrs. Poland's estate is a question upon which we pass no opinion. Except in 1896, Mrs. Wright attended to all her household and family duties. In 1896 they had a hired girl. Her charge for nursing and washing was, first, $2 per day, then $3, and in 1896 $4. These charges exceed those of trained nurses, and the action of the commissioners in allowing them seems a little strange. But, however this may be, this was a debt from Mrs. Poland to Mrs. Wright, and not to Mr. Wright, who alone was under obligation to pay the notes. Mr. Wright is now seeking to offset a debt due to his wife against mortgages and notes executed by him. We disposed of this question in *Wolff* v. *Jasspon, ante,* 11 (85 N. W. 260).

There is evidence that Mrs. Poland stated that Mrs. Wright should be well paid for nursing and caring for her. But no inference can be drawn from this that she was to be paid by applying the value of her services upon her husband's debt. It is very apparent that the scheme

to pay these mortgages in this manner was an after-thought on the part of Mr. Wright. After the death of Mrs. Poland, he offered to deed the land to Mrs. Hubbard if she would pay the funeral expenses and give him what it would cost to foreclose, $200. Such a proposition cannot be rejected from the consideration of the court on the ground that it was an offer to compromise. It was an offer which very clearly shows that Mr. Wright still considered himself indebted upon the mortgages to nearly the value of the premises, and that he desired to save something if he could.

The decree will be reversed, and a decree entered in this court in accordance with this opinion for the balance due Mrs. Hubbard, with the usual decree of sale, with costs of this court.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred. LONG, J., did not sit.