## WILLIAMS v. THOMAS.
### No. 6163.

District Court, E. D. Michigan, S. D.
June 1, 1934.

Emmons, Oren & Sleeper, of Detroit, Mich., for plaintiff.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio (by Robert S. Marx, of Cincinnati, Ohio), for defendant.

## Findings of Fact.

LINDLEY, District Judge.

1. The defendant herein is the duly appointed and qualified acting receiver of First National Bank of Detroit, having been appointed as such by the Acting Comptroller of the Currency on May 11, 1933, and said First National Bank of Detroit closed its doors at the close of business on February 11, 1933, and never thereafter was opened for business.

2. On February 11, 1933, Roy R. Williams, plaintiff in this cause, had on deposit in said First National Bank of Detroit in his commercial account, the net balance of $91,985.18 remaining therein after an adjustment of admitted mutual liabilities.

3. On February 11, 1933, First National Bank of Detroit had, among its assets, a promissory note dated November 21, 1932, payable ninety days after date, to the order of First National Bank of Detroit, in the principal amount of $35,000, with interest at the rate of 6 per cent. per annum, which note was executed as maker by Great Lakes Refining Company, a Michigan corporation, and which note was indorsed by H. H. Emmons, Roy R. Williams, C. B. Van Dusen, W. F. Evans, R. H. Webber, Oscar Webber, and M. L. Brown.

4. Said indorsers were accommodation indorsers, they having indorsed said note prior to its delivery to First National Bank of Detroit, without regard to priority as to liability among themselves; said indorsers were not payees, nor was any one of such indorsers the transferee or indorsee of any other one indorser.

5. Said note was the last of a series of renewal notes, the first of such notes having been given to First National Bank in Detroit on September 3, 1926, at which time the sum of $35,000 was credited to Great Lakes Refining Company, and subsequently withdrawn by said corporation, which original note was indorsed exactly the same as the note involved in this suit, as was each subsequent renewal.

6. Said note to date has not been paid and the maker of said note is insolvent and has been so for a long time past.

7. Since February 11, 1933, Roy R. Williams, the plaintiff in this suit, has received all of the dividends payable on his deposit accounts, except on the sum of $34,990.52, which amount is equivalent to the amount owing on the referred to note, and upon which amount no dividend has been paid.

8. The deposit account, above referred to, of $91,985.18 has been split into two claims, one for $34,990.52 and upon which dividends have been withheld as above referred to, and one in the amount of $56,994.66, upon which dividends have been paid.

9. C. O. Thomas, as receiver of First National Bank of Detroit, has withheld dividends on the said claim of $34,990.52 pending judicial determination of Roy R. Williams' right to set off said sum against said note.

10. Roy R. Williams, the plaintiff herein, intends to proceed against the remaining indorsers on said promissory note for contribution after the set-off is allowed.

11. After the closing of said First National Bank of Detroit, the conservator thereof, appointed by the Comptroller of Currency, and who later became receiver thereof by similar appointment, withheld, and continues to withhold, sufficient of the deposit of the plaintiff herein, namely, $34,990.52, to pay the entire balance of said note.

12. Notwithstanding the repeated demands made by plaintiff for the payment of the dividends which have from time to time been declared by said conservator-receiver, the said conservator-receiver has refused to pay the same to said plaintiff.

13. Failing to receive said dividends as aforesaid, plaintiff herein has demanded that said conservator-receiver offset said note against said deposit and transfer said note to plaintiff, but that said conservator-receiver, defendant herein has and does refuse to do so.

14. In addition to the foregoing, immediately prior to the filing of the bill in the instant case, the conservator-receiver made demand upon each of the seven individual indorsers for the payment in full of the balance of said note.

## Conclusions of Law.

1. The plaintiff, Roy R. Williams, together with the remaining six indorsers, are joint accommodation indorsers and are only jointly liable to First National Bank of Detroit, and are not severally liable, nor are they jointly and severally liable.

2. First National Bank of Detroit, being indebted to Roy R. Williams individually, and he being indebted to said bank jointly with six other individuals, the respective obligations or claims cannot be set off one against the other because of lack of mutuality. The claims are not due to and from the

same parties in the same capacity, which is essential to a valid set-off.

3. The plaintiff, being one of seven joint indorsers, seeking the set-off of his deposit in an insolvent national bank against his joint liability, cannot prevail unless the maker of such note is insolvent and the remaining six indorsers are also proven to be insolvent.

4. The burden of so proving such insolvency is on the party seeking to enforce the right of set-off, and the failure of such party to prove insolvency raises the presumption that the remaining parties to the obligation are solvent.

5. All set-offs are governed by the state of things existing at the time the bank closed, and no right of set-off can be created by events, happenings, or actions occurring or taking place after the appointment of a receiver.

6. The action of a receiver of an insolvent national bank cannot create a situation or state of facts, which could be construed as granting a right of set-off, if no such right existed at the time of his appointment or at the time of the closing of the bank.

7. The defendant should at once release to plaintiff the dividends upon plaintiff's deposit now being withheld.

8. There should be a decree dismissing the bill of complaint for want of equity.

## Memorandum of the Court.

█ Plaintiff is one of seven accommodation indorsers of a note of an insolvent dissolved corporate maker, for $35,000, and as such, with his co-indorsers, is jointly liable therefor to the holder, the defendant, receiver of an insolvent national bank. Plaintiff is also a depositor of the bank in an amount in excess of the sum due on the note. He has received dividends upon that part of his deposit in excess of the note liability, the receiver refusing to pay dividends upon the remainder of the deposit until this cause shall be decided. Plaintiff brings suit to compel the receiver to set off, as against his deposit, the amount necessary to discharge the note aforesaid. The receiver asserts that the mutuality necessary to the right of set-off does not exist.

Section 12 of chapter 22 of Act No. 314 of the Michigan Public Acts of 1915, which is popularly referred to as the "Judicature Act," and was enacted for the purpose of reforming and codifying judicial procedure, reads as follows: "In any action against two or more defendants, judgment may be rendered for the plaintiff against some one or

more of the defendants, and also in favor of some one or more of the defendants against the plaintiff, according as the rights and liabilities of the respective parties shall appear, either upon confession, default, by pleading or on trial; and when judgment shall be rendered in favor of any defendant, he shall recover costs against the plaintiff, in the same manner as though judgment had been rendered for all the defendants; but no judgment shall be entered upon any purely several liability against any party not served with process."

This statute is practically identical with section 5778 of the Compiled Laws of Michigan of 1872, which was as follows: "In any such action, judgment may be rendered for the plaintiff against some one or more of the defendants, and also in favor of some one or more of the defendants against the plaintiff, according as the rights and liabilities of the respective parties shall appear, either upon confession, default, by pleading, or on trial; and when judgment shall be rendered in favor of any defendant, he shall recover costs against the plaintiff, in the same manner as though judgment had been rendered for all the defendants."

The statute remained substantially the same until its amendment in 1915.

It is plaintiff's contention that the effect of this statute is to permit, in a suit against joint obligors, judgment against any one or more thereof, and thereby, inasmuch as in a suit against the jointly liable indorsers a separate judgment might be rendered against plaintiff, in effect the bank or its receiver has a cause of action against him severally, liability on which should be set off as against his deposit account.

Unfortunately there is no clear-cut interpretation of this statute by the Michigan courts, as applied to the present facts. In 1887, in Seligman v. Gray, 66 Mich. 341, 33 N. W. 510, the court said concerning the prior statute that: " * * * It is well settled law that there must be, in a joint action, a joint judgment, or no judgment at all."

In Anderson v. White, 39 Mich. 130, in discussing the act of 1872 it was said: "An examination of this section in connection with those preceding it, shows that it has no application to a case like the present, but to cases where the holder of a 'bill of exchange or promissory note, instead of bringing separate suits against the drawers, makers, guarantors of the payment thereof, indorsers, and acceptor of such bill or note' includes all or any of the said parties in one action."

Thus we have a direct statement that the judgment in a joint action must be joint or not at all, and language indicating intent to declare it proper, in an action against different classes of defendants jointly, to render judgment against those of one class. The language of the statute is that in any action "against two or more persons," judgment may be rendered for plaintiff against one or more defendants "according to the rights and liabilities of the respective parties." Keeping clearly in mind this language and the expressions of the Michigan Supreme Court, the logical meaning of the statute, I think, is that it was not intended to alter the joint liability of joint obligors; that it preserved liabilities as they then existed, but permitted judgment to be entered against one or more of two or more defendants, whom the evidence should show under existing law were liable. The effect is to obviate the necessity of judgment against all. But I cannot see that it intended to modify the existing liability of joint debtors so that a several judgment could be entered against one or more who are only jointly liable. The substantive rights of parties were not changed; the judgment must be "in accordance with the rights of the parties," and no attempt is made to modify those rights.

Plaintiff relies upon the case of Lorimer v. Wayne Circuit Judge, 216 Mich. 587, 185 N. W. 791, 792. In that case, action was brought by plaintiffs against a large number of defendants, constituting the Detroit Coal Exchange, for legal services rendered. Shortly after the suit had been instituted, the plaintiff procured a default against several of the defendants for their nonappearance, and then proceeded to take a judgment against those defaulted, for the amount demanded. The plaintiff failed to proceed to trial against the remaining defendants. Some three years after judgment against the defaulted defendants as aforesaid, plaintiffs procured to be issued an execution against said judgment debtors, who thereupon filed a motion in the circuit court in the county of Wayne to set aside the judgment as void for its failure to run against all defendants. Upon the circuit court denying the motion, they applied for a writ of mandamus in the Supreme Court. That court, in denying the application, said: "Counsel insist that after Beaumont, Smith & Harris elected to proceed against all [of the defendants], then that course must be pursued to the end. Our attention is called to the following statute, which, it is said, justifies the action of plaintiffs in taking judgment against only

a portion of the defendants. * * * 3 Comp. Laws 1915, § 12802. This section appears to have changed the old rule contended for by plaintiffs. It appears to authorize the taking of judgment against a part of the defendants, either upon default or on the trial. The section last quoted was a new section with the advent of the Judicature act, and we are persuaded that it was passed for the purpose of enabling a plaintiff to do what was done in this case."

It should be observed, however, that the cause of action there was joint and several, not merely joint, and the effect of the decision was to hold that judgment might be rendered against a part of all joint and several debtors. In other words, the court believed that the statute so modified the common-law rule that a plaintiff might have judgment against any number of several joint and several defendants instead of only against one or all of such defendants. Any other interpretation of the decision is irreconcilable with the language of the court in the case of Seligman v. Gray, supra, that "there must be, in a joint action, a joint judgment, or no judgment at all," which stands as the decision of the court under an earlier, substantially similar statute, unmodified and unreversed. That the court was dealing with a dissimilar situation in the case of Lorimer v. Wayne Circuit Judge, supra, is apparent from the language, "Having decided that the contract sued upon is a joint and several one, plaintiffs cannot complain that judgment was not taken against some other defendant." It follows that the Michigan statute does not create a severable liability against plaintiff which he may set off as against his individual deposit.

Plaintiff insists also that, independent of the Michigan statute, equity with its inherent right to produce equitable results will, when the circumstances warrant, depart from the general rule and force a set-off of a joint debt against a several debt (57 Corpus Juris, p. 361, § 4; p. 462, § 117; Wolff v. Jasspon, 126 Mich. 11, 85 N. W. 260; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059), and that the facts here are such as to bring the present case within such exception. The true rule in such cases is thus stated by the Supreme Court in Scammon v. Kimball, 92 U. S. 362, 367, 23 L. Ed. 483. In that case, the court stated:

"Whether the suit be one at law or in equity, set-off must be understood as that right which exists between two parties, each of whom, under an independent contract, owes

an ascertained amount to the other, to set off their respective debts by way of mutual deduction, so that, in any action brought for the larger debt, the residue only, after such deduction, shall be recovered. * * *

"Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or of a separate debt against a joint debt; nor will such courts allow a set-off of debts accruing in different rights, except under very special circumstances, and where the proofs are clear and the equity is very strong."

In Gray v. Rollo, 18 Wall. (85 U. S.) 629, 632, 21 L. Ed. 927, the same court said: "Courts of equity, following the law, will not allow a set-off of a joint debt against a separate debt, or conversely, of a separate debt against a joint debt; or, to state the proposition more generally, they will not allow a set-off of debts accruing in different rights."

In the present case we have clearly only a joint liability which plaintiff wishes set off against his several deposit. True the primary debtor, the maker, is insolvent; but the other joint debtors are solvent. The right to demand contribution against his joint codebtors exists in favor of plaintiff in case he pays or otherwise procures satisfaction of the debt. I find in these facts no special circumstances justifying me in concluding that the case is within any recognized exception to the general rule governing equitable set-off.

Apparently opposed to my conclusion in this regard is Clark v. Sullivan, 2 N. D. 103, 49 N. W. 416, 13 L. R. A. 233, but there, it is intimated, the joint codebtor as well as the maker was insolvent. Furthermore, the court was there dealing with the subject-matter of liabilities of sureties, whose rights are especially tenderly regarded by courts of equity. If the case is to be regarded as applicable to the facts here, I regret that I cannot agree with its conclusion. That the fact that one of the joint debtors is surety for the others creates a different situation in equity is apparent from the language of the Supreme Court in Gray v. Rollo, supra, where it is said: "So, if one of the joint debtors is only a surety for the other, he may, in equity, set off the separate debt due to his principal from the creditor; for in such a case the joint debt is nothing more than a security for the separate debt of the principal. * * * *"

It follows that the bill must be dismissed for want of equity at plaintiff's costs. Execution for same is awarded. Proper decree may be submitted.